E. T. JENNETTE & CO. v. CITY HAY AND GRAIN COMPANY.

(Filed 28 February, 1912.)

1. Contracts, Written—Telegrams—Questions of Law.

A telegram and its reply expressing the agreement of the parties is a contract in writing the meaning of which is for the court to determine.

2. Same—Vendor and Vendee—Terms of Sale—Interpretation.

In reply to defendant's letter offering corn at a certain price, without stipulation as to time of delivery, plaintiff telegraphed: "Letter 23. Book 400 cracked corn. Shipment thirty days, if possible. Answer immediately by wire"; to which defendant replied: "Booked cracked corn": *Held*, under the contract, the defendant was obliged to sell to plaintiff cracked corn in the quantity and at the price named if ordered within thirty days, and not thereafter.

3. Contracts—Vendor and Vendee—Measure of Damages—Vendee's Duty.

The plaintiff having purchased a number of sacks of cracked corn of the defendant, received shipments with knowledge that the sacks were not tagged as required by the Department of Agriculture and that it did not come up to the grade purchased, and sold a number of the sacks to a purchaser who kept them two weeks, when they were seized by the said department. The defendant theretofore sent the necessary tags for the sacks to

JENNETTE *v.* HAY AND GRAIN CO.

the plaintiff, who refused to have anything further to do with the shipment, and the corn became worthless in the hands of the department: *Held*, it was the duty of the plaintiff to do what he reasonably could to lessen his loss, and the measure of his damages was the difference in value of the corn as it actually was and which it should have been under his contract, and such other expenses as were actually incurred by him in handling it.

APPEAL from *Joseph S. Adams, J.*, at December Term, 1910, of BEAUFORT.

The plaintiffs, F. T. Woolard and E. J. Jennette, trading as E. T. Jennette & Co., bring this action to recover $150, alleged to be due as damages on a contract for the purchase of 400 sacks of cracked corn.

The plaintiffs contend that the contract between them and the defendant required the defendant to ship 400 sacks of corn, at a stipulated price, within thirty days from 26 March, 1909, as ordered out by them, and to ship on orders after the thirty days upon adding 2 cents per sack, which addition was called "carrying charges," and the defendant contends that the contract was to ship 400 sacks if ordered out with thirty days.

It is admitted that 150 sacks were shipped under said contract within thirty days from its date, and that the plaintiffs ordered out the remaining 250 sacks on 29 April, 1909, after the expiration of the thirty days, which the defendant refused to deliver, and the plaintiffs offered evidence of their damages sustained by reason of such refusal.

The 150 sacks shipped by the defendant were in three shipments of 50 sacks each, the last shipment being about 7 April, 1909. All of these shipments were made upon drafts with bills of lading attached, and the plaintiffs were compelled to pay the drafts before they could receive the corn; and tags, containing an analysis as required by chapter 149, Laws 1909, were not attached to the sacks; and the plaintiffs offered evidence that the sacks were less in weight than was required by said statute.

One of the plaintiffs testified that the first and second shipments were defective in quality and short in weight; that when the third shipment was received they sold 45 sacks of it to Smith Paul, who carried it to his place of business from the depot, and

after it had been in his possession about two weeks it was seized and condemned by the Department of Agriculture, on account of the shortage in weight and the defective grade; that after the seizure the plaintiffs never offered to sell it, and had nothing more to do with it; that they replaced the corn taken from Paul, and the last time they saw the corn seized it was rotten and worthless.

The said plaintiff also testified that the order for the 400 sacks of corn was a telegram, of date 26 March, 1909, at 9:28 P. M., which was as follows: "Letter 23. Book 400 cracked corn. Shipment thirty days, if possible. Answer immediately by wire"; to which the defendant replied, at 10:10 A. M. of 27 March, 1909: "Booked cracked corn."

The letter of 23 March, referred to in the first telegram, is one from the defendant to the plaintiffs, offering corn and naming the price, but making no statement as to time of shipment.

On 8 April the plaintiffs wrote the defendant, complaining of the quality of the corn and the deficiency in weight, and on 9 April the defendant replied, saying, among other things: "We request that you dispose of these goods to the best advantage, sell it in bulk, or in any other way that you think best, and send us account of sales; and if you so desire, we will cancel the contract with you for the balance, as the margins we are able to get on your contract are not adequate to all of the trouble we are having."

The defendant sent to the plaintiff the analysis tags required by the statute, soon after the shipments began, and such tags were on the 45 sacks at the time of seizure.

On 24 April, 1909, the day of the said seizure, the plaintiffs notified the defendant thereof, and soon thereafter (the exact time not stated) the defendant paid the Department of Agriculture the charges assessed by it.

His Honor charged the jury that the plaintiffs were not entitled to recover anything on account of the refusal to ship the last 250 sacks, because ordered after the expiration of the contract, and the plaintiffs excepted.

The plaintiffs requsted his Honor to charge the jury as follows: "It is contended by plaintiffs that of one shipment of 50 sacks, 45 sacks were seized and condemned by the Department of Agriculture and became a total loss to the plaintiffs, and that they replaced the same with other corn which they purchased at a higher price, or $1.65 per sack; that this shipment so seized was made by defendant, bill of lading attached, and was paid for by plaintiffs before the bill of lading was obtained and before the corn had or could have been examined in the usual course of business of this kind; that the same was taken direct from the depot to customer's place of business and was thereafter found in defective condition and condemned; that said shipment was defective in quality and short in weight and so much below the corn contracted for in grade as to be practically valueless on this market; that defendant was notified of this condition and thereafter undertook to settle the matter with the department itself. If you find these contentions to be true from the evidence, the court charges you that the plaintiff would be entitled to recover $1.50 per sack for the corn condemned, or so much thereof as was shipped by defendant, and in addition thereto would be entitled to recover the difference between $1.50 per sack on said shipment of 50 sacks and the market price of No. 2 cracked corn at the time and place of delivery, if you find from the evidence that such price had advanced."

This was refused, and plaintiffs excepted. There are other exceptions in the record, but they embrace the same questions covered by the two exceptions stated. There was a verdict in favor of the plaintiffs for $38.25, and from a judgment rendered thereon they appeal.

*Small, McLean & McMullan for plaintiffs.*
*Rodman & Rodman for defendant.*

ALLEN, J. The contract between the plaintiffs and the defendant is in writing, and consists of the telegram of 26 March, 1909, sent by the plaintiffs, and the reply of the defendant of 27 March, 1909, and being in writing, it was for the court to determine its meaning. We think his Honor held correctly,

as he charged the jury that "The contract between the parties was that the defendant would sell to the plaintiff 400 sacks of No. 2 cracked corn, delivered in Washington, at $1.50 per sack, provided that the same was ordered out by the plaintiffs within thirty days, and plaintiff was not entitled to call for shipment of any part of the 400 sacks after the thirty days had expired."

This seems also to have been the understanding of the plaintiffs at the time this action was commenced, as they wrote the defendant on 3 May, 1909: "We are reasonable, and do not expect anything unreasonable. Now, if you will refer to the purchase of this goods, you will find that we ordered some of this shipment out at once; we could have put the entire shipment off until thirty days. It looks as this should give us consideration."

They made no claim then that they had the right under the contract to order out any of the corn after thirty days.

This being the correct construction of the contract, there can be no recovery for refusal to ship the 250 sacks ordered by the plaintiffs after the expiration of thirty days.

Instead of the prayer requested by the plaintiffs, in reference to the 45 sacks, his Honor charged the jury: "As to the 45 sacks seized and condemned, the court charges you that after this corn was shipped it became the property of the plaintiffs, and when it was seized and condemned in the hands of one of their customers, it was their duty to release the same, and the measure of damages in such case was the difference in value between No. 2 cracked corn, weighing 100 pounds per sack, at the time and place of delivery, and the corn which was actually delivered, together with such reasonable costs and charges as plaintiffs incurred on account of the seizure and rehandling of the corn in question. After this corn was delivered to the plaintiffs and seized by the State, it was the duty of the plaintiffs to do the best they could with it and to pay the cost of forfeiture and other necessary expenses incurred; but it is admitted in this case that defendant paid the costs of the forfeiture, and the plaintiffs are therefore not entitled to recover anything on that account, but only the difference in the value between this corn and No. 2 cracked corn, as above stated, together with any other expenses actually incurred by them in its handling."

In view of the evidence of the plaintiffs and the admitted facts, this instruction was as favorable to the plaintiffs as they were entitled to. They say they discovered that the corn being shipped by the defendant had no tags on it, and was short in weight and defective in quality, before the shipment containing the 45 sacks was made, and that they continued to receive and sell it. The defendant sent the analysis tags to the plaintiffs as soon as notified of the necessity for them, and wrote them on 9 April to dispose of the corn in any way they thought best. The corn seized by the Department of Agriculture was in the possession of Smith Paul two weeks before the seizure, and he says he made no complaint about the corn, and the defendant paid the charges to the department. During this time the plaintiffs made no effort to release the corn from seizure, and, as they say, they had nothing more to do with it and permitted it to remain in the warehouse until it became worthless.

We find

No error.